Jeffrey B. Maltzman, CA Bar No. 131758
Edgar R. Nield, CA Bar No. 135018
Gabrielle De Santis Nield, CA Bar No. 110930
Rafaela P. Castells, CA Bar No. 290828
MALTZMAN & PARTNERS, P.A.
681 Encinitas Boulevard, Suite 315
Encinitas, CA 92024
Telephone: (760) 942-9880
Facsimile: (760) 942-9882
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
gabn@maltzmanpartners.com

Attorneys for Defendant, PRINCESS CRUISE LINES, LTD.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEVIN HACHINSKY and LESLIE HACHINSKY,<br><br>Plaintiffs,<br><br>vs.<br><br>PRINCESS CRUISE LINES, LTD.,<br><br>Defendant. | CASE NO.: 2:20-CV-02963-RGK-SK<br><br>**DEFENDANT PRINCESS CRUISE LINE LTD.'S MOTION TO DISMISS**<br><br>Date: July 27, 2020<br>Time: 9:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850<br><br>Magistrate: Hon. Steve Kim<br>Filed: 03/30/2020 |

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................... 1

II. LEGAL STANDARD ..................................................................................... 4

III. MEMORANDUM OF LAW .......................................................................... 4

    A.  Federal Maritime Law Applies to Plaintiffs' Claims............................. 5

    B.  Plaintiffs Cannot Recover for Emotional Distress ................................ 5

        1.  To Recover for Emotional Distress Plaintiffs Must Plausibly Allege That They Suffered Symptoms of That Disease ........................................................................................ 5

        2.  To Recover for Emotional Distress Plaintiffs Must Plausibly Allege A Physical Manifestation of the Claimed Distress ........................................................................................ 6

    C.  Plaintiffs Cannot Recover for a Mere Diagnosis, Without More, as a "Physical Harm" ................................................................................ 8

    D.  Plaintiffs Have not Plausibly Alleged Causation ................................ 10

    E.  Plaintiffs' Claims for Punitive Damages are Foreclosed as a Matter of Law and Should be Dismissed or Stricken ........................... 11

V.  CONCLUSION ............................................................................................. 14

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

# TABLE OF AUTHORITIES

Cases

*Ainsworth v. Penrod Drilling Co.*, 972 F.2d 546 (5th Cir. 1992) .............................. 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 4, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 4

*Churchill v. F/V Fjord*, 892 F.2d 763 (9th Cir. 1998) ............................................... 12

*Duet v. Crosby Tugs, LLC*, 2008 WL 5273688 (E.D. La. Dec. 16, 2008) .................. 6

*Dunn v. Hatch*, 792 F. App'x 449 (9th Cir. 2019) .................................................... 12

*Ellenwood v. Exxon Shipping*, 795 F. Supp. 31 (D. Me. 1992) .................................. 7

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) .................................................. 13

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995) .. 5

*Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474 (5th Cir. 2001) ............................. 6

*Miles v. Apex Marine Corp.*, 498 U.S. 19 (1986) ............................................... 12, 13

*Taghadomi v. United States*, 401 F.3d 1080 (9th Cir. 2005) ...................................... 5

*Tassinari v. Key W. Water Tours, L.C.*, 480 F. Supp. 2d 1318 (S.D. Fla. 2007) .... 6, 7

*Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560 (11th Cir. 1991) ................ 5

*Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403 (S.D. Fla. 1995) ............. 7

*Williams v. United States*, 711 F.2d 893 (9th Cir.1983) ............................................. 5

*Wyler v. Holland Am. Line-USA, Inc.*, 2002 WL 32098495 (W.D. Wash. Nov. 8, 2002) ........................................................................................................................ 6

Statutes

46 U.S.C. §30303 ....................................................................................................... 13

Rules

Fed. Rule Civ Pro 12(b)(6) ................................................................................... 4, 11

Fed. Rule Civ Pro 12(f) ............................................................................................. 11

L.R. 7-3 ........................................................................................................................ 1

Defendant, PRINCESS CRUISE LINES, LTD. (hereafter "Defendant" or "PRINCESS"), hereby files this Motion to Dismiss the Complaint filed by Plaintiffs herein. In the interests of judicial economy, the court is hereby advised that this motion is identical to Motion to Dismiss filed in the Carr matter in that both are premised on nearly identical Complaints and involve only Plaintiffs who were aboard the same cruise and who allege that at some undisclosed time after their cruise they tested positive for COVID-19, but they do not allege any symptoms of the virus, any substantial physical manifestation to their emotional distress, nor any facts connecting Defendant's alleged conduct with their positive COVID-19 diagnosis. For the reasons set forth below, Plaintiffs' Complaint should be dismissed.

This motion is made following several conferences of counsel pursuant to L.R. 7-3 which took place between May 7, 2020 and June 1, 2020.

## I.  INTRODUCTION

This is a tort case brought by Plaintiffs who do not allege any physical injury and whose allegations of emotional harm are squarely foreclosed by established precedent. The Court should dismiss this case for failure to state a claim.

Plaintiffs allege that they were among the thousands of passengers on the *Grand Princess* cruise ship who embarked on February 21, 2020. (Compl. ¶ 11.) Like the vast majority of those passengers, Plaintiffs do not allege that they suffered any physical symptoms of COVID-19. Rather, Plaintiffs' Complaint is nearly identical to numerous complaints filed by the same Plaintiffs' attorneys representing other passengers aboard this same cruise seeking emotional distress damages based only on a fear of contracting COVID-19.[1] The sole difference between this

---

[1] *Weissberger v. Princess Cruise Lines Ltd*, No. 2:20-CV-02267-RGK-SK; *Abitbol v. Princess Cruise Lines Ltd*, No. 2:20-CV-02414-RGK-SK; *Austin v. Princess Cruise Lines Ltd*, No. 2:20-CV-02531-RGK-SK; *Gleason v. Princess Cruise Lines Ltd*, No. 2:20-CV-02328-RGK-SK; *Jacobsen v. Princess Cruise Lines Ltd*, No. 2:20-CV-02860-RGK-SK; *Jones v. Princess Cruise Lines Ltd*, No. 2:20-CV-02727-RGK-SK; *Kurivial v. Princess Cruise Lines Ltd*, No. 2:20-CV-02361-RGK-SK; *Lane v. Princess Cruise Lines Ltd*, No. 2:20-CV-02865-RGK-SK; *Mendenhall v.*

Complaint and the form complaint Plaintiffs' counsel filed in all those other cases is the addition of a single passing mention that the Plaintiffs tested positive for COVID-19 at some unspecified time. Plaintiffs do not allege any financial loss related to the diagnosis and only allege emotional distress.

But courts have held that a bare diagnosis, without any actual symptoms causing some sort of functional impairment, is not a cognizable physical harm sufficient to support a disease claim such as is alleged here. Nor does a mere diagnosis support a claim for emotional distress; courts hold that plaintiffs must allege objectively serious physical manifestations of their claimed emotional distress.

Allowing for liability based purely on a diagnosis—particularly without any allegation tying Plaintiffs' alleged diagnosis to PRINCESS—would permit virtually all of the harmful consequences as were addressed in Defendant's Consolidated Motion to Dismiss this same law firm's many "fear of COVID" cases. (*See Consolidated Motion to Dismiss, D.E. 31, filed in Case No. 2:20-CV-02267-RGK-SK*). This is particularly important here when dealing with a virus which causes no symptoms whatsoever in a large percentage of the people who ultimately test positive for the virus. Even if Plaintiffs could recover for their diagnosis in theory, their Complaint does not plausibly allege facts to establish causation. To the contrary, Plaintiffs merely state they tested positive for COVID-19. (Compl. ¶ 19.) Plaintiffs, however, never affirmatively allege that they contracted the disease on the vessel or as a result of PRINCESS's conduct nor state any facts demonstrating this essential element of their claim.

With the COVID-19 pandemic, a flood of lawsuits has already begun. In just the first few months of this pandemic, more than 30 lawsuits have already been filed

---

*Princess Cruise Lines Ltd*, No. 2:20-CV-02753-RGK-SK; *Sheedy v. Princess Cruise Lines Ltd*, No. 2:20-CV-02430-RGK-SK; *Chao v. Princess Cruise Lines Ltd,* No. 2:20-CV-03314-RGK-SK; *James v. Princess Cruise Lines Ltd,* No. 2:20-CV-03868-RGK-SK; *Stramel v. Princess Cruise Lines Ltd,* No. 2:20-CV-03960-RGK-SK; and others.

just from this one cruise ship, with similar cases filed relating to passengers on other cruises and other vessels. And there is no reason to think the flood will abate. As of the date of filing this brief, approximately two million cases of COVID-19 have been confirmed in the United States alone and approximately 7 million cases worldwide.[2]

Given the millions of confirmed cases of COVID-19, it is inevitable that thousands of schools, nursing homes, shopping centers, stadiums, parks, and businesses across America have had cases on their premises. A positive COVID-19 test result, without more, cannot be carte blanche to sue any business that had an infected individual patronize that business at some point in time in the past. To allow Plaintiffs to bring such a claim without any evidence Plaintiffs suffered any real harm and without any evidence establishing causation between Defendant's alleged conduct and Plaintiff's diagnosis, would further forestall the economy's reopening. This is especially troublesome provided the extent of asymptomatic cases (where an individual tests positive for COVID-19 or for COVID-19 antibodies yet never exhibits symptoms). By allowing this case to go forward as pled, anyone with a positive COVID-19 test could pick the deepest pocket business they visited and claim they are entitled to millions of dollars in damages simply because another individual who later tested positive had been in the same area previously. Businesses cannot open if they are to be held liable to individuals who merely claim they tested positive for COVID-19 at some point after visiting a business where another infected individual was present.

Plaintiffs are seeking over $1 million each for emotion distress related to having tested positive for COVID-19. Courts require that a plaintiff experience symptoms of their contracted illness, and serious physical consequences from their emotional distress before allowing recovery for the damages alleged herein. Here,

---

[2] *See* Coronavirus Disease 2019 (COVID-19), Cases in the U.S., Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

Plaintiffs do not allege they suffered any symptoms of the virus nor any physical manifestation of their alleged emotional distress. Finally, Plaintiffs' request for punitive damages is flatly insufficient under the strict standards governing punitive damages in maritime claims.

For the reasons set forth herein, Plaintiffs' Complaint fails to allege sufficient facts to state a claim to relief and must be dismissed.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*

## III.   MEMORANDUM OF LAW

Recognizing the potential for widespread liability in disease exposure cases, courts apply strict limits on such cases including the requirement that a plaintiff must suffer symptoms of the contracted illness **and** must plausibly allege serious physical manifestations of their purported emotional distress. *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 427 (1997)*; Ainsworth v. Penrod Drilling Co.*, 972 F.2d 546 (5th Cir. 1992); *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403, 407 (S.D. Fla. 1995).  Plaintiffs have not alleged either. Accordingly, their case fails to state a cause of action and should be dismissed under Rule 12(b)(6). Beyond these shortcomings, the Complaint should also be dismissed based on its failure to allege any facts establishing causation and their request for

punitive damages should be dismissed or stricken as a matter of law under the facts alleged in this maritime action.

### A. Federal Maritime Law Applies to Plaintiffs' Claims

As Plaintiffs acknowledge by invoking this Court's maritime jurisdiction and stating that the case "involves a maritime tort" (Compl. ¶ 3), Federal maritime law applies to Plaintiffs' claims.[3] Maritime law applies when "(1) the alleged wrong occurred on or over navigable waters, and (2) the wrong bears a significant relationship to traditional maritime activity." *Williams v. United States*, 711 F.2d 893, 896 (9th Cir.1983). "'[V]irtually every activity involving a vessel on navigable waters" is a "traditional maritime activity sufficient to invoke maritime jurisdiction." *See Taghadomi v. United States*, 401 F.3d 1080, 1087 (9th Cir. 2005) ((quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 542 (1995))); *Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560, 1654 n. 10 (11th Cir. 1991) ("In maritime tort cases such as this one, in which injury occurs aboard a … ship upon navigable waters, federal maritime law governs the substantive legal issues.").

### B. Plaintiffs Cannot Recover for Emotional Distress

Black-letter principles of maritime law foreclose Plaintiffs from recovering for emotional distress, the only harm Plaintiffs allege in the Complaint.

#### *1. To Recover for Emotional Distress Plaintiffs Must Plausibly Allege That They Suffered Symptoms of That Disease*

For the period *before* Plaintiffs' alleged diagnosis, recovery for emotional distress is barred. Under the Supreme Court's decision in *Metro-North*, a plaintiff alleging emotional distress from such exposure "cannot recover unless, and until, he manifests symptoms of a disease." *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 427 (1997). The Court has made clear that its rule applies not just to

---

[3] Plaintiffs' Passage Contract applicable to their voyage similarly invokes maritime law. See, https://www.princess.com/legal/passage_contract/plc.html at Section 1.

claims based on exposure to toxins like asbestos, but to any claim based on alleged exposure to a potential source of disease—specifically including "germ-laden air." *Metro-North*, 521 U.S. at 437. The Supreme Court "sharply circumscribed" recovery under federal law specifically to avoid the "uncabined recognition of claims for negligently inflicted emotional distress," which would "hol[d] out the very real possibility of nearly infinite and unpredictable liability for defendants." *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 146 (2003) (quoting *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 546 (1994)).

The hard-and-fast rule from *Metro-North*, precluding a plaintiff's recovery for emotional distress claims "unless, and until, he manifests symptoms of a disease," thus squarely forecloses any recovery for harm caused prior to their alleged contraction of COVID-19. 521 U.S. at 427.

### 2. To Recover for Emotional Distress Plaintiffs Must Plausibly Allege A Physical Manifestation of the Claimed Distress

For the period *after* Plaintiffs' alleged diagnosis, recovery for emotional distress still fails because there is no alleged *physical manifestation* of the claimed distress. A positive COVID-19 test result in and of itself is not legally sufficient to support a claim for emotional distress. Rather, courts require that claimed emotional distress must cause non-trivial physical consequences. In other words, "[g]eneral maritime law requires an 'objective manifestation' of the emotional injury—a physical injury or effect which arises from the emotional injury." *Wyler v. Holland Am. Line-USA, Inc.*, 2002 WL 32098495, at *1 (W.D. Wash. Nov. 8, 2002); *accord Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 477-478 (5th Cir. 2001); *Duet v. Crosby Tugs, LLC*, 2008 WL 5273688, at *3 (E.D. La. Dec. 16, 2008) ("Plaintiff's emotional distress was not provoked by a physical injury, rather, plaintiff's physical injury was provoked by emotional distress"); *Tassinari v. Key W. Water Tours, L.C.*, 480 F. Supp. 2d 1318, 1325 (S.D. Fla. 2007) ("[S]tand-alone claims for negligent

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

infliction of emotional distress require a physical manifestation of emotional injury.").

///

Courts impose this physical-manifestation requirement because it "furnishes a 'guarantee of genuineness' to the fact-finder, thus limiting the prospects for a flood of fraudulent claims." *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403, 407 (S.D. Fla. 1995); *see also Tassinari*, 480 F. Supp. 2d at 1325 (S.D. Fla. 2007) (citing "the beneficial public policy of placing an objective and easily applied restriction on frivolous claims").

Under this rule, minor physical consequences are not sufficient. *See, e.g.*, *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403, 407 (S.D. Fla. 1995) (plaintiffs could not recover even though they were in the zone of danger because they "complain[ed] only of fear and/or seasickness which in most cases lasted no more than a few days"); *Ainsworth v. Penrod Drilling Co.*, 972 F.2d 546 (5th Cir. 1992) (barring recovery for emotional distress where the plaintiff suffered "trivial" injuries, including upset stomach, headache, and pulled muscles); *Ellenwood v. Exxon Shipping*, 795 F. Supp. 31, 35 (D. Me. 1992) (loss of sleep and loss of appetite insufficient).

Plaintiffs' Complaint contains no allegation of any physical manifestations of their emotional distress, let alone the serious and significant physical manifestation which is required. As explained, such allegations are a prerequisite to stating a claim for emotional distress. Plaintiffs' allegations that they "are suffering from emotional distress" and are "traumatized" are exactly the sorts of generalized allegations of fear and anxiety that courts have held are clearly insufficient to support a claim for emotional distress. *Supra*; *see, e.g.*, *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403, 407 (S.D. Fla. 1995). This failure to allege a physical manifestation also provides an independent reason why plaintiffs cannot recover for the period before the alleged diagnosis. Thus, even if Plaintiffs had adequately pled that they

contracted COVID-19 as a result of Defendant's conduct, their emotional-distress claims would nonetheless fail for the separate reason that they have not adequately pled a physical manifestation of their emotional distress.

Independently, plaintiffs cannot recover even following their alleged diagnosis because they have not alleged any "genuine and serious" manifestation of actual, physical symptoms. *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 157-58 (2003) (quoting *Smith v. A.C. & S., Inc.*, 843 F.2d 854, 859 (5th Cir.1988)). The Supreme Court in *Ayers* allowed a plaintiff diagnosed with cancer to recover for distress from his fear of cancer—a debilitating and often fatal long-term disease. But as explained below (*infra* section III.C), courts do not allow recovery based on mere diagnoses absent some sort of concrete, "functional impairment" like that accompanying cancer. Unless a plaintiff genuinely and seriously fears that sort of tangible, functional impairment at the time he files suit, then he cannot recover for emotional distress. That rule is necessary to avoid an anomalous, arbitrary result: a plaintiff would be able to recover for the *fear* of something that, if it came to pass, he could not actually recover for as a physical harm.

### C. Plaintiffs Cannot Recover for a Mere Diagnosis, Without More, as a "Physical Harm"

Plaintiffs do not allege any non-emotional injury. Instead, they lodge conclusory statements that they are at "risk of immediate physical injury" (Compl. ¶ 3.) They have not plausibly alleged any physical harm that is recoverable under maritime law. Plaintiffs allege nothing that could plausibly be "physical" beyond the positive diagnosis itself. Plaintiffs' failure to allege any actual physical injury or what the injury consists of should be the end of the matter.

Courts reject claims of physical injury based only on positive tests for asymptomatic diseases. Rather, a plaintiff claiming "compensable harm" from a disease must "adduc[e] objective testimony of a *functional impairment*." *In re Hawaii Fed. Asbestos Cases*, 734 F. Supp. 1563, 1567 (D. Haw. 1990) (emphasis

added); *See e.g.*, *Sheridan v. Cabot Corp.*, 113 F. App'x 444, 448 (3d Cir. 2004) (noting that the "Pennsylvania Supreme Court" has held "that asymptomatic pleural thickening is not a sufficient physical injury to warrant damages, and emphasizing that that plaintiffs were free to initiate lawsuits "when symptoms develop and physiological impairment begins"); *Sondag v. Pneumo Abex Corp.*, 55 N.E.3d 1259, 1265 (Ill. App. Ct. 2016) ("To qualify as 'physical harm,' the alteration of the body must have a detrimental effect in a more practical sense, such as by causing noticeable respiratory symptoms") (citing *Ackison v. Anchor Packing Co.,* 120 Ohio St.3d 228, 897 N.E.2d 1118, 1125 (2008); *Giffear v. Johns-Manville Corp.* (Pa. Super. Ct. 1993) 429 Pa.Super. 327, 340 [632 A.2d 880, 887-88], *aff'd sub nom. Simmons v. Pacor, Inc.* (1996) 543 Pa. 664 [674 A.2d 232] (a claim of asymptomatic pleural thickening does not rise to the level of a legally cognizable cause of action or, in other words, a legally compensable injury); *Owens–Illinois v. Armstrong,* 87 Md.App. 699, 591 A.2d 544, 561 (1991), *aff'd in part and rev'd in part on other grounds,* 326 Md. 107, 604 A.2d 47 (1992); Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 4, Reporters' Note to cmt. c, at 59–60 (2010) ("An unfortunate and aberrational exception to the self-correction of small or trivial harms explained in this Comment is asbestos claims by plaintiffs who suffer no clinical symptoms but who have abnormal lung X-rays, a condition known as pleural plaque. Some courts have responded by requiring that an asbestos plaintiff prove the existence of clinical symptoms before sufficient bodily injury exists.")). Plaintiffs cannot recover under either of their causes of action without alleging physical harm

A COVID-19 diagnosis, without more, is not in itself a compensable physical harm. It is now accepted that most individuals who contract COVID-19 never experience symptoms.[4] And the complaint contains no allegation of any actual

---

[4] Plaintiffs' Complaint itself acknowledges this fact, noting the rate of positive cases "especially among those without symptoms…" (Compl. at p. 3.)

9

impairment due to the alleged diagnoses. Treating a positive test result with nothing more as a "physical "harm" worth $1 million in compensatory damages, plus punitive damages, expands tort liability in the same unlimited and unpredictable way as allowing claims for pure emotional distress. Finding Plaintiffs' claims sufficient would invite harsh policy consequences the Supreme Court has warned against. *See Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424 (1997); *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994); *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135 (2003). COVID-19 is a widespread pandemic, and is well-known to be transmittable through airborne droplets. Any business, school, church or other venue alleged to have opened its doors a day too soon could be exposed to claims of emotional distress from anyone who stepped inside and then later tested positive for COVID-19 regardless of whether the individual alleges they came into contact with a source of COVID-19 at that establishment. This concern is even more significant in relation to a widespread and often undetectable disease like COVID-19 which has infected millions of people to date, a huge share of whom were asymptomatic. Airline travel and public transportation will prove impossible. Individuals who test positive after they attend a football game, transit through an airport, eat at a restaurant, or shop at a mall or store will have carte blanche to sue whoever has the deepest pockets for emotional distress based entirely on having been at a venue where someone later is found to have tested positive for COVID-19. Allowing Plaintiffs' claims to proceed, in other words, endorses the "nearly infinite and unpredictable liability for defendants" that *Gottshall* and *Metro-North* expressly set out to prevent. *Ayers*, 538 U.S. at 146.

### D. Plaintiffs Have not Plausibly Alleged Causation

Even if Plaintiffs had any avenue for recovery, their claims independently fail because they do not state any facts suggesting that any conduct by Defendant was the factual or proximate cause of their positive diagnosis. Plaintiffs' Complaint is a boilerplate pleading devoid of factual allegations demonstrating they contracted

10

COVID-19 as a result of the alleged negligence. As pled, their Complaint makes it impossible to determine if they caught the virus before embarkation, at some port of call, through an asymptomatic individual (for which Defendant would likely not be liable), or during their post-cruise government managed transportation or quarantine. As such, Plaintiffs' claims should be dismissed.

Significantly, Plaintiffs do not allege they contracted COVID-19 on the vessel. Plaintiffs do not allege they experienced symptoms of the disease on the vessel (or at all). Plaintiffs do not allege they suffered physical harm, injury or any ensuing sequelae related to COVID-19. Plaintiffs include a bare allegation that they "contracted Covid-19 and still remain positive to date." (Compl. ¶ 19.) Plaintiffs do not specify any facts showing how or where they contracted the virus or if it was a result of PRINCESS's conduct. They have not alleged that they were sick on the vessel, that they were diagnosed with COVID-19 on the vessel, or even that the virus entered their bodies on the vessel. Plaintiffs conspicuously fail to assert that they came into direct contact with any passengers or crew who had COVID-19, and instead assert only that there were other passengers somewhere aboard the ship— one with thousands of passengers and crew—who had come into contact with people who were later discovered to be infected. Given that millions of people have tested positive for COVID-19, alleging causation requires more than being aboard Defendant's vessel and then testing positive for COVID-19 at some point thereafter.

Plaintiffs' Complaint is precisely the sort of "[t]hreadbare recital [] of the elements of a cause of action" that cannot defeat a motion to dismiss. *Ashcroft v. Iqbal,* (2009) 556 U.S. 662, 678.

### E. Plaintiffs' Claims for Punitive Damages are Foreclosed as a Matter of Law and Should be Dismissed or Stricken

Finally, even if Plaintiffs' claims could go forward on the merits, Plaintiffs' claims for punitive damages are foreclosed as a matter of law and should therefore be dismissed under Rule 12(b)(6) or stricken under Rule 12(f).

The Supreme Court has recently clarified several important limitations on the availability of punitive damages in maritime cases, all of which make clear that punitive damages are unavailable in cases alleging only emotional distress—at least where that distress is not intentionally inflicted. In *The Dutra Group v. Batterton*, 139 S. Ct. 2275 (2019), the Supreme Court set forth a framework for deciding when punitive damages are available under general maritime law, and then applied that framework to hold that punitive damages are unavailable in claims for unseaworthiness. First, where there is no federal statute authorizing punitive damages, courts must determine "whether punitive damages have traditionally been awarded" in the category of case at issue. *Id.* at 2283. If they are not, then the imposition of punitive damages is precluded. *See Dunn v. Hatch*, 792 F. App'x 449, 451 (9th Cir. 2019) (*Batterton* "held that punitive damages cannot be recovered on claims in admiralty where there is no historical basis for allowing such damages"). If the imposition of punitive damages would create "bizarre disparities in the law," that further counsels against their availability. *Batterton*, 139 S. Ct. at 2287. And in determining whether to permit punitive damages, courts must proceed "cautiously in light of Congress's persistent pursuit of uniformity in the exercise of admiralty jurisdiction." *Id.* at 2278 (*Miles v. Apex Marine Corp.*, 498 U.S. 19, 27 (1986)).

Under this framework, Plaintiffs cannot recover punitive damages. While the Ninth Circuit has occasionally upheld the imposition of punitive damages for certain claims under general maritime law, *see Churchill v. F/V Fjord*, 892 F.2d 763, 772 (9th Cir. 1998), Defendant is aware of no binding precedent supporting the imposition of punitive damages for negligently (even grossly negligently) inflicted harm without actual physical injury or property damage. To the contrary, any "tradition" of punitive damages in maritime cases is limited to cases where the defendant's conduct is truly "outrageous"—cases of "enormity or deplorable behavior." *Dunn*, 792 F. App'x at 452. And some courts have held expressly that punitive damages are unavailable to "personal injury claimants … except in

12

exceptional circumstances such as willful failure to furnish maintenance and cure to a seaman (who are viewed as special wards of the court requiring additional protection), intentional denial of a vessel owner to furnish a seaworthy vessel to a seaman, and in those very rare situations of intentional wrongdoing." *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1429 (11th Cir. 1997). As in *Batterton*, the absence of case law supporting the availability of punitive damages in suits for negligently inflicted harm absent physical injuries "is practically dispositive." *Id.* at 2284.

The imposition of punitive damages here would create the same "bizarre disparit[y] in the law" that demanded foreclosure of punitive damages in *Batterton*. The Court there noted that, if punitives were permitted for unseaworthiness claims, "a mariner could make a claim for punitive damages if he was *injured* onboard a ship, but," because of the Court's prior decision in *Miles*, "his estate would lose the right to seek punitive damages if he *died* from his injuries." 139 S. Ct. at 2287 (emphasis added). The same disjoint would occur here, as the Death on the High Seas Act (DOHSA) expressly forbids the imposition of punitive damages for deaths caused by incidents more than three miles offshore. *See* 46 U.S.C. § 30303 (allowing damages only for "pecuniary loss"); *Batterton*, 139 S. Ct. at 2285 n.8. Under Plaintiffs' theory, passengers alleging exposure to a disease on the high seas can freely recover punitive damages if they got a positive diagnosis with no symptoms, and yet, if those same passengers died from the disease, DOHSA would squarely bar their claim for punitive damages. To avoid that arbitrary differential treatment, and to properly "pursue the policy expressed in congressional enactments" like DOHSA, punitive damages must be foreclosed. *Id.* at 2281.

The policies at play further cement that punitive damages cannot be available. To the extent that liability *alone* did not create the "infinite and unpredictable liability," *Ayers*, 538 U.S. at 146, the "stark unpredictability of punitive awards," *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 499 (2008), would make that threat an

13

unavoidable reality.[5] In turn, the open-ended threat of punitive damages would hobble "maritime commerce"—the "fundamental interest served by federal maritime jurisdiction." *Batterton*, 139 S. Ct. at 2287.

## V. CONCLUSION

For the foregoing reasons, Defendant requests that the Court grant its motion to dismiss and to dismiss Plaintiffs' Complaint.

DATED: June 9, 2020      MALTZMAN & PARTNERS

By: *s/ Jeffrey B. Maltzman*
Jeffrey B. Maltzman
Edgar R. Nield
Gabrielle De Santis Nield
Rafaela P. Castells
*Attorneys for Defendant,*
*Princess Cruise Lines Ltd.*

---

[5] Even if punitive damages were available, the Supreme Court has held that "under maritime law, the maximum ratio of punitive damages to compensatory damages is 1-1." *Exxon Valdez v. Exxon Mobil*, 568 F.3d 1077, 1079 (9th Cir. 2009). If this Court does not dismiss or strike the request for punitive damages altogether, the Court should limit Plaintiffs' damages accordingly.

14

DEFENDANT'S MOTION TO DISMISS      2:20-CV-02963-RGK-SK